May it please the court. Liza Khan, pro bono counsel for petitioner in this case, Mr. Ruben Gomez. I would like to request leave of court to reserve two of my ten minutes for response to the government's position. The I.J. in this case made a critical factual error. At my client's second to last hearing, the I.J. confirmed on the record that his fingerprints were up to date and would still be good at his next hearing. But at the final hearing, after the government disclosed that Mr. Gomez's fingerprints had expired, the I.J. reversed course. She asserted that Mr. Gomez had failed to comply with her order to update his fingerprints before his merits hearing. Counsel, you're going to the merits, and I understand why, but can you tell me, given the way the B.I.A. dealt with this and focused exclusively on what it did, do we have jurisdiction to hear this matter? I think we do have jurisdiction in this case because the B.I.A.'s order stated twice the grounds for the I.J.'s decision. The B.I.A. recognized and stated that failure to timely comply with the biometric requirements was the reason for the I.J.'s denial for relief. The B.I.A. also found that Mr. Gomez did not demonstrate that the I.J. erred in denying his applications for relief. And this is sufficient for exhaustion under Ninth Circuit case law. But didn't it expressly decline to review the I.J.'s decision because of the procedural defect in the brief? Well, the court cited the matter of Cervantes and the matter of Gutierrez, which said that it would, the cases that said that they would expressly decline an issue not raised by the party on appeal. And I acknowledge that the record... Since that's what they did, and they seem to have gone out of their way to do that, how do we have jurisdiction? I think we could distinguish this case because the only issue that was before the B.I.A. was the fingerprinting issue. And, you know, in previous cases, such as Kinvey... In his appellate brief, though, he did raise the merits of his claim. He didn't explicitly raise... To the B.I.A. He did not explicitly raise the fingerprinting issue. No, but he raised the merits. He raised the merits of it. That's right. But he did not... The record that we have before us, we don't have a record that shows that he exhausted his fingerprint claims before the B.I.A. in the notice of appeal or in the brief, but I think that that's not required under this circuit's case law. Why is that? Don't we always have to have... When we examine a claim, doesn't it have to be exhausted before we consider it? The claim does have to be exhausted, but the B.I.A. can choose to reach the claim, even if the petitioner doesn't raise that claim. It could. Yeah, it could. I mean, I must say I struggle to find a way because, you know, the government's position in this case is really deplorable, but I must say I can't find a way, and I was that it didn't... That it noted that the issue hadn't been raised, and it explained that that could raise... It could reach it, but it didn't. I don't... How... Give me your best statement. How do you get around it? Well, I think one way you can get around it is by recognizing that the B.I.A. noted the grounds for the I.J.'s decision, noted that the decision was based on a failure to timely comply with the biometric requirements, and in this case, it was a factual error. In R.C.B. Holder, for example, the Ninth Circuit has stated that it may deem an alien to have exhausted the claim if the I.J.'s decision is facially premised on an incorrect factual finding, but the B.I.A. nonetheless adopts the I.J.'s decision. So I think you can get to it in that way, and here, I think, again, the only basis for the I.J.'s decision was the fingerprinting issue, and that was the only relevant issue to present on appeal here. And I just wanted to also move to the issue that the I.J.'s discretion to grant a continuance in these cases is limited. This Court has found time and time again that even if the I.J. has given explicit instructions to a petitioner to renew their fingerprints, if the petitioner fails to do that, it could be an abuse of discretion to fail to grant a continuance in those cases, and here, we have a factual pattern which is much more egregious. We have a pattern where the I.J. explicitly told the petitioner that his fingerprints would still be valid by the merits hearing, but suddenly reversed course at that merits hearing. Why don't you save the rest of your time, and let's see what the government has to say. Okay. Good morning, Your Honors, and may it please the Court. My name is Jennifer Singer, and I represent the United States Attorney General in this matter. While I acknowledge that this case has sympathetic aspects to it, that does not It's not just sympathetic. The government's conduct is, when I said deplorable, it's an understatement. The government told this man that his fingerprints were current, and they would be current. Then he got there, and they said, oh, they're not current. And they misrepresented the facts. Deliberately or not, I don't know. But both the representative of Homeland Security and the district judge said exactly the opposite of the truth. And on that basis, they dismissed it. They had told him that they were current. Then they got into this proceeding, and they said, oh, we told you it wasn't current. We made it clear to you that they weren't current. And that was not true. And both the representative of the Department of Homeland Security and the judge misrepresented the facts. They were exactly the opposite of what they said, and on that basis, they dismissed his case. Isn't that correct? That is correct. Well, don't you think that's deplorable? It's unfortunate what happened, but I assume that it was just a misreading of the record. There were 10 hearings. The immigration judge takes notes on each hearing, and I'm sure she just looked at the wrong notes. So they knew they dismissed it. You know they dismissed it. The BIA knows they dismissed it incorrectly, erroneously, based on their false representations. And you're now still here saying he shouldn't get a hearing. That is correct. Do you think you might like to think that over again if you were sent to mediation?  Well, he could have a hearing. I mean, that could be a possibility, and if the court was inclined, that we would entertain that idea. But I just don't know how it would help, because the point of the exhaustion requirement is, I don't know what the board could have done in this case. Nothing was raised before. But the board could have taken up the issue on its own. It could have. It clearly could have, because there was a mistake. If they looked at the record, they would have noticed this discrepancy. Correct. But the error is not... And they could have just said, they could have just addressed it. I just feel like that's an onerous... And reversed it and sent it back down and said that the record here is incorrect. I feel it's an onerous task for the board. The error on the record is not... Why is it an onerous task? We do it all the time. That error is not easily discernible. You need to read through the entire transcript to find that out. If he had read the last hearing, the very last hearing, I guess it was in August, and then you read the current hearing, it's obvious that there was a mistake. It is, but I just don't think the board has to be tasked with that. It's not their responsibility. Why shouldn't we just interpret what the board said here as sufficient to... Under the circumstances, as counsel just argued, that the board's decision is premised on an incorrect fact that's blatant in the record. And then under those circumstances, we should just construe what the board did here as sufficient to meet, for exhaustion purposes, send it back and say, do this over. If the court were to find that issue is exhausted, I would agree that remand would be the appropriate remedy so then the board could address the error in the first instance, which is the point of the exhaustion requirement, that they address errors and fix them on appeal. But the petitioner didn't raise it, and I just think it's an onerous task to expect the board in each case... No, but why couldn't we just construe that? I mean, their decision is premised on an incorrect factual foundation. If the court were to construe it, then I would say remand is the appropriate remedy here. Let me ask you this, aside from what my colleague has suggested. Are you aware of any authority, case law, that would permit us to, if you will, waive the exhaustion requirement when it's premised upon a false statement that... All of us have said it, basically. I mean, you look at what happened, the petitioner here was misinformed, deceived. It doesn't sit well at all that the government is now saying, well, you know, yeah, the result is based on deceit, but we've got to go forward with it because it would be inconvenient for us. Is there any case law that would permit us, aside from construing it in the way that Judge BIA is based on a false premise, to treat it as if it is exhausted? I am not aware of any case law that is an exception to the exhaustion requirement, and I don't know that the board was aware of this factual mistake in the record. Well, if they read the record, they'd have to know it. That's true, but again, the point of exhaustion is to raise issues to the board. The board is busy, it has lots of cases, there are a lot of pro se aliens, it should not be tasked with reading the entire record in every single case. With respect, we have to read the record all the time, the BIA has to read the record, that's what it's reviewing, and it cites to the record what happened in the IJ's decision when it makes decisions itself. I'm just troubled by the concept that they somehow didn't know. It seemed to me they knew perfectly well what the issue was, and it's simply a timeliness, it's not like something in a grocery store where it's expired and you shouldn't use it after that point. It's a biometric measurement, they want to be sure that it's up to date, but the practical matter is it's not really old, there's really nothing that's missing other than the fact that the date has expired, and the petitioner was told that it was okay, and then it turned out not to be okay. Is there a judicial estoppel concept that can apply here? Not that I'm aware of, I mean exhaustion for administrative remedies is a statutory requirement, the only exceptions I know are if the board sui sponte addresses it, or somehow the argument can be construed as the petitioner raising it. You know, it's not so much that they made a mistake and told him that it had expired when it hadn't, it's that they misrepresented both the IJ and the Department of Homeland Security after first telling him it was okay, said they had told him the opposite, and on the basis of their saying they had told him something, when they had told him exactly the opposite. I mean, they're at fault, not him. That's correct. But if he makes a mistake, then he doesn't even get a hearing, he's out of luck, he gets deported. When they make a mistake, they probably got promoted. I mean, I don't know what the board was supposed to do, the petitioner was in the, he was there, he heard what the IJ said before. What the board could do now is to say, you know, this is pretty disgraceful conduct on the government's part. We'd like to take another look at this and waive the jurisdictional point. I mean, that is something that I could raise with the board and see if they would be willing to join, perhaps, in a motion to reopen, but at that point, at this juncture, that has not been... Well, we could probably have a discussion about that in mediation, and I would hope somebody from the government would have some decency if they went to that. I don't know where you get to the level where somebody, and I don't mean this critically of you, because I know you don't have the authority to do it, and it's not your decision, but I think if we had a drink and I asked you what you thought of the government's behavior, you'd have a hard time saying anything other than it's disgraceful. Perhaps even without a drink. How about I just assume that? In defense of the agency, I don't, I mean, yes, there was error, but I don't think it was malicious or intentional or anything of that nature. No, it wasn't malicious, but they dismissed his case for something they did, not for something he did. And when it's discovered, at that point, somebody in the government should say, this isn't the way the government behaves. He may not like the federal government, there are people who don't, but few people would accuse him of doing this, taking advantage of somebody and deporting them without a hearing because of mistakes the government made. I mean, I can raise those issues and concerns with the agency. Okay, thank you. Thank you, Your Honor. Tell us what's the best case for, do you have a case that supports the theory that if it's based on a mistake in fact, that will give us jurisdiction? I do, Judge Reinhart. So in R.C.V. Holder, the Ninth Circuit stated that it may deem an alien to have exhausted a claim if the I.J.'s decision was facially premised on an incorrect factual finding, but the BIA nonetheless adopts the decision. And I think that's what we have here. What's the citation on that case? One second, let me look it up. 659 F3D 925, 925, and then the pin site is 930, 2011. And again, the fingerprinting issue was the only basis. Hold on, let me see. What did they say in that case that they didn't say anything about the board having considered it? They did not say anything in that case about the board having considered it. It was just a statement that said the Ninth Circuit may deem the alien to have exhausted the claim if the I.J.'s decision was facially premised on an incorrect factual finding, but the BIA nonetheless adopted the decision. So I think that gives you enough room here to have jurisdiction over this case. And I just wanted to respond to the government's position that you would have to comb through the record here to find the mistake. I don't think that's true. I think it was on the last couple of pages of the second to last hearing, and then the final hearing and the I.J.'s decision goes on and on about how Mr. Gomez failed to comply with the government's orders and with her orders to update his fingerprints. So I think it was a fairly obvious mistake here, and the petitioner should be allowed to just have a brief continuance to update his fingerprints and just proceed on the merits. And just one more point that I wanted to make was that Mr. Gomez proceeded pro se before the BIA. So he didn't have any legal counsel to help him putting together his notice of appeal or his brief. And as we know, the claims raised to the BIA pro se are construed liberally on appeal. And a failure to raise an argument isn't fatal to obtaining this court's review because the exhaustion requirement is met if the BIA ignores a procedural defect and elects to consider the issue anyway. And finally, as the government stated, it agrees that remand is appropriate if exhaustion is met in this case. And all we're asking for is a remand so that my client can renew his fingerprints and have an opportunity to present his claims on the merits. Are you prepared to rely upon the accuracy of what you told us about that case? I believe so, yes. If there are no further... It feels like it's a little bit different, but... It wasn't the central holding of the case, but the case did make that point. All right, thank you. Thank you.
judges: Reinhardt, Paez, M. Smith